**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 20, 2006[*]
Decided December 21, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 05-4378

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 04-20072 |
| LARRY D. SMITH, *Defendant-Appellant.* | Michael P. McCuskey, *Chief Judge.* |

**O R D E R**

Larry Smith, a fugitive, was hiding out in a hotel when federal authorities finally arrested him. Almost immediately after his arrest—but before the officers gave him *Miranda* warnings—they asked Smith where he kept his gun. Smith told them, then received and waived his *Miranda* rights, and consented to a search of his hotel room. The officers found the gun in Smith's room just where he had indicated and he was later charged with illegal firearm possession. The district court refused to suppress Smith's statement about the gun's location and the gun

---

[*] We granted Smith's unopposed motion to waive oral argument, and thus the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(f).

itself, and after a jury trial Smith was convicted of possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). He was sentenced to 41 months. On appeal he argues that the district court erred in denying his motion to suppress. We affirm.

The district court found the following facts after the suppression hearing, none of which are claimed to be clearly erroneous, the applicable standard of review. *See United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006). Federal authorities received a tip that Smith—wanted on several outstanding warrants—was armed and hiding out at a hotel. Five officers went to the hotel and staked out the room next to Smith's. When officers saw Smith come out of his room, they ran into the hall—outfitted in riot gear and brandishing guns—and yelled that Smith was under arrest. Smith resisted. Investigator Kendall, who could tell from Smith's light clothing that he wasn't armed, tackled him. Smith's head hit the door frame. Because Smith continued to resist, the officers tasered him in the leg. Smith then relaxed his arms, and he was handcuffed.

Kendall and a U.S. Marshal immediately asked Smith if he had a gun; Smith replied that there was a gun back in his room in a footlocker. Before this questioning, other officers had already performed a twenty-second, protective sweep of Smith's room and secured it but saw no weapons. Kendall didn't know about this protective sweep before he questioned Smith about the gun.

After Smith acknowledged that a gun was in his room, Kendall told him to relax, and cleaned the minor abrasion Smith received after he hit his head on the door frame. Kendall then read Smith his *Miranda* rights, and asked if he would consent to a search of his hotel room. Smith answered yes, and an agent obtained a waiver of rights and consent form. Smith was read his rights for a second time before he signed the form. When Smith consented, no weapons were pointed at him and nobody threatened or hit him. After Smith waived his *Miranda* rights and consented to the search, Kendall asked Smith where the key to the footlocker was. Smith told him and the officers found the gun.

The district court denied the motion to suppress Smith's initial answer about the location of his gun, relying upon the public safety exception to *Miranda* articulated in *New York v. Quarles*, 467 U.S. 649, 655-59 (1984). This exception allows police to question an arrestee without first giving *Miranda* warnings if the police reasonably believe doing so will protect them or the public from an immediate danger, like a nearby concealed weapon. *Id.* at 659.

When reviewing the denial of a motion to suppress we review questions of law *de novo*. *See Mendoza*, 438 F.3d at 795. On appeal, Smith again argues that the district court should not have admitted into evidence his pre-Mirandized statement about the gun under *Quarles*. Specifically, Smith argues that when

Kendall and the Marshal asked him if he had a gun they had no objectively reasonable need to protect themselves or the public because they had already handcuffed Smith, believed he did not have a weapon on his body, and other officers had already gone into Smith's room—which they secured from the public—to perform a protective sweep.

Following *Quarles,* we have held that when arresting officers have reason to believe that a suspect has concealed a weapon near the place of arrest, they may ask about the weapon to protect themselves or the public "from the immediate danger that a weapon would pose" even after the suspect is handcuffed and searched. *United States v. Edwards,* 885 F.2d 377, 384 n.4 (7th Cir. 1989); *see also United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991) (police were not required to give *Miranda* warnings before asking arrestee where his gun was; even though pat-down indicated arrestee did not have a gun, police had reason to believe it could be close by or in a public area).

Here, the officers had reason to believe Smith had a concealed gun nearby. He was wanted on weapons charges and the tipster had told police that Smith was recently armed. The officers could tell that the gun was not on his body, so there was reason to believe Smith had hidden or disposed of it somewhere else close by. Even though Smith was handcuffed and his hotel room was secured, the gun could be elsewhere nearby and thus might pose a threat either to members of the public who could discover it, or even to the officers should Smith again resist arrest. Reasonably believing that Smith had a concealed gun but having not yet seen it, the officers properly invoked the public safety exception to ask Smith where it was.

Smith's second argument—that his waiver and consent to search were involuntary so that the gun itself should have been suppressed—is also meritless. He says that he "consented" only after being tackled and tasered by police, and hitting his head on the door frame. We initially note that Smith "signed a consent form, which weighs heavily toward finding that his consent was valid." *United States v. Taylor*, 31 F.3d 459, 463 (7th Cir. 1994). Moreover, the district court determined that under the totality of the circumstances, Smith's waiver and consent were not coerced, a factual finding we review for clear error. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Mendoza*, 438 F.3d at 795. The record shows that the officers did not use weapons or any kind of force to obtain the waiver and consent (only the arrest), and that any physical injury Smith sustained during his arrest was insignificant. We have found that arrest-related injuries do not necessarily vitiate valid consent, *see Watson v. DeTella*, 122 F.3d 450, 454 (7th Cir. 1997) (consent voluntary even though defendant had been kicked in the head by police at the time of his arrest), particularly when arresting officers inflict injuries solely to bring suspects into compliance with police orders and not as a form of interrogation. *See id.* (suspect was kicked in the head during his arrest

not to make him confess but because he refused to raise his hands).  That is the case here, so the district court's consent finding was not clearly erroneous.

AFFIRMED.